O

# United States District Court
# Central District of California

| | |
|---|---|
| GRACIELA TANIOUS,<br><br>    Plaintiff,<br><br>  v.<br><br>WELLS FRAGO ADVISORS FINANCIAL NETWORK, LLC et al.,<br><br>    Defendants. | Case № 2:24-cv-03903-ODW (Ex)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DENYING DEFENDANTS' MOTION TO STAY DISCOVERY [13] [28]** |

## I.  INTRODUCTION

Plaintiff Graciela Tanious brings this action against Defendants Wells Fargo Clearing Services, LLC ("Wells Fargo") and Wells Fargo Advisors Financial Network, LLC in connection with an employment dispute. (Notice Removal ("NOR") Ex. A ("Complaint" or "Compl.") ¶¶ 1–3, 9, ECF No. 1.) Defendants now move to enforce an arbitration agreement that Tanious signed at the beginning of her employment. (Mot. Compel Arb. ("Motion" or "Mot.") 8, ECF No. 13.) For the reasons discussed below, the Court **GRANTS** Defendants' Motion to Compel Arbitration.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

On May 28, 2015, Graciela Tanious began working as a financial advisor at Wells Fargo[2] in Beverly Hills, California. (Mot. 8–9.) Tanious advised and supported clients with investments and other financial services. (*Id.* at 9; Decl. Suzanne Dewitt ISO Mot. ("Dewitt Decl.") ¶ 3, ECF No. 13-2.) At the beginning of Tanious's employment, Wells Fargo offered Tanious a $50,000 "Asset Bonus" ("Bonus"). (Mot. 9; *see* Dewitt Decl. Ex. B ("Promissory Note") 14–15.[3]) In exchange, Wells Fargo required her to sign the Promissory Note, which contained various terms, including an arbitration clause ("Arbitration Clause") and a forum selection clause. (Mot. 9; *see* Promissory Note 14–17.) After Tanious signed the Promissory Note, Wells Fargo paid her the $50,000 Bonus. (Mot. 10; *see* Dewitt Decl. ¶ 6.)

The Arbitration Clause requires Tanious to arbitrate "any disputes concerning [her] employment or termination of employment" with Wells Fargo. (Promissory Note 16–17 ("Arbitration Clause").) The Arbitration Clause provides that "the then-current Rules of the Financial Industry Regulatory Authority ('FINRA')" govern arbitration. (*Id.*) The Arbitration Clause also contains a website address "to the pertinent FINRA rules for employment (industry) arbitrations." (*Id.*)

Tanious worked for Wells Fargo until January 29, 2024, the date of her termination. (Mot. 10.) A few months later, on April 8, 2024, she initiated this action in California Superior Court. (Compl.) Tanious asserts six causes of action against Defendants: (1) discrimination under the Fair Employment and Housing Act ("FEHA"); (2) failure to prevent discrimination under FEHA; (3) retaliation under FEHA; (4) failure to prevent retaliation under FEHA; (5) wrongful termination in

---

[2] Tanious alleges that Defendants employed her. (Compl. ¶ 8.) However, Defendants claim that Wells Fargo Clearing Services, LLC was Tanious's actual employer, and that Wells Fargo Advisors Financial Network, LLC is an improper defendant because it never employed Tanious. (NOR 5 n.1; Mot. 8 n.1.) The Court does not rule on this dispute because neither party asserts that this would affect the Court's analysis of the Motion. (*See* Mot.; Opp'n; Reply.)

[3] As there is no pagination on the Promissory Note, the Court cites the ECF page numbers.

violation of public policy; and (6) retaliation under the California Labor Code. (*Id.* ¶¶ 16–47.)

On May 9, 2024, Defendants removed the case to this Court based on diversity jurisdiction. (NOR.) On July 18, 2024, Defendants moved to compel arbitration and stay the case pending completion of arbitration. (Mot.) On September 25, 2024, Defendants filed an ex parte application to request a temporary stay on discovery pending the Court's ruling on the Motion to Compel Arbitration, which Tanious opposed. (Ex Parte Appl., ECF No. 24; Opp'n Ex Parte Appl., ECF No. 26.) The Court denied Defendants' ex parte application because Defendants failed to show they were "without fault in creating the crisis that requires ex parte relief." (Min. Order 1, ECF No. 27.) On October 11, 2024, Defendants filed a regularly noticed motion to stay discovery, pending the resolution of the Motion, which is fully briefed. (Mot. Stay Disc., ECF No. 28; Opp'n Mot. Disc., ECF No. 29; Reply ISO Mot. Stay Disc., ECF No. 30.) The Motion to Compel Arbitration is also fully briefed. (Opp'n Mot. ("Opp'n"), ECF No. 18; Reply ISO Mot. ("Reply"), ECF No. 20.)

### III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") is meant to "ensur[e] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (alteration in original). Section 2 of the FAA creates a policy favoring enforcement, stating that arbitration clauses in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting 9 U.S.C. § 2). Under the FAA, a party to such an agreement may petition an appropriate federal district court to compel arbitration. 9 U.S.C. § 4.

The FAA governs a contract dispute relating to an arbitration provision if the contract affects interstate commerce. *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273–74 (1995). When it applies, the FAA restricts a court's inquiry

into compelling arbitration to two threshold questions: (1) whether there was an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Cox*, 533 F.3d at 1119. If the answer to both questions is yes, the FAA requires the court to enforce the arbitration agreement according to its terms. *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719–20 (9th Cir. 1999). However, the FAA includes a savings clause that allows for the invalidation of an arbitration agreement "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339 (quoting *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

## IV.     DISCUSSION

Defendants move to enforce the Arbitration Clause and compel Tanious to arbitrate her claims against them. (Mot.)

**A.     Request for Judicial Notice**

As a preliminary matter, Defendants request the Court take judicial notice of five documents: (1) Tanious's brokercheck maintained by FINRA; (2) FINRA's Code of Arbitration Procedure for Industry Disputes Rule ("CAPID Rule" or "Rules") 13400; (3) CAPID Rules 13505–13514; (4) CAPID Rule 13904; and (5) CAPID Rule 13802. (Req. Judicial Notice ISO Mot. ("RJN") ¶¶ 1–5, ECF No. 14.) Tanious does not oppose Defendants' request; in fact, Tanious references the CAPID Rules in her opposition. (*See* Opp'n 9–10.)

The CAPID Rules are directly related to the matters at issue and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see Prodanova v. H.C. Wainwright & Co., LLC*, No. 2:17-cv-07926-JAK (ASx), 2018 WL 8017791, at *4 (C.D. Cal. Dec. 11, 2018) (noting that "courts routinely take judicial notice of materials submitted to, or

promulgated by, FINRA"). Thus, the Court **GRANTS** Defendants' RJN and takes judicial notice of FINRA's CAPID Rules 13400, 13505–13514, 13802, and 13904. (RJN Exs. 2–5.) Conversely, the Court **DENIES** Defendants' RJN as to Tanious's brokercheck because it does not "affect the outcome of this motion." *Migliori v. Boeing N. Am., Inc.*, 97 F. Supp. 2d 1001, 1004 n.1 (C.D. Cal. 2000); (*see* RJN Ex. 1.)

**B.      Motion to Compel**

Tanious does not challenge that the parties agreed to arbitrate certain claims or that the Arbitration Clause covers the claims she asserts in this action. (*See* Opp'n 4–5.) Nor does she dispute that (1) Wells Fargo presented her with the Promissory Note containing the Arbitration Clause, (2) she signed it,[4] and (3) Wells Fargo thereafter employed her. (*See* Mot. 8–10; Opp'n 4–5.) Accordingly, the Court finds the parties agreed to arbitrate. Moreover, the Court finds that each of the claims Tanious asserts in this action falls within the scope of the Arbitration Clause. (*Compare* Arbitration Clause (agreeing to arbitrate "any disputes concerning your employment or termination of employment" with Wells Fargo) *with* Compl. ¶¶ 16–47 (alleging six counts concerning Wells Fargo's employment and termination of Tanious).) Therefore, the Court turns to Tanious's sole argument that the Arbitration Clause is unenforceable. (Opp'n.)

The parties dispute whether the Court should apply the FAA or the California Arbitration Act ("CAA") to determine the validity of the Arbitration Clause. (Mot. 14; *see* Opp'n 5.) However, Tanious's sole contention is that the Arbitration Clause is unenforceable because it is unconscionable. (Opp'n 5–9.) Regardless of whether the FAA or the CAA applies, California contract law governs whether the Arbitration Clause is unconscionable. *See* 9 U.S.C. § 2; *compare Duarte v.*

---

[4] Tanious states that "[t]here is no evidence such as an electronic trail to prove that Plaintiff actually agreed to this agreement and the signature is not authenticated." (Opp'n 7.) The Court does not understand Tanious's "no evidence" argument concerning procedural unconscionability as a challenge that she did not sign the Promissory Note. (*See* Promissory Note 14, 17 (containing a signature above "Graciela Tanious" on the first page and second signature above "Graciela Tanious" on the fourth page, accompanied by a signature of a witness).)

*JPMorgan Chase Bank, Nat'l Ass'n*, No. 2:21-cv-01907-ODW (AFMx), 2021 WL 5299908, at *4–6 (C.D. Cal. Nov. 15, 2021) (applying California unconscionability law where the FAA governs), *with Mission Viejo Emergency Med. Assocs. v. Beta Healthcare Grp.*, 197 Cal. App. 4th 1146, 1153, 1158 (2011) (applying California unconscionability law where the CAA governs). Thus, the Court need not decide which law applies to the validity, and looks to California's unconscionability law to determine enforceability.

Under California law, "[u]nconscionability has both a procedural and a substantive element." *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 492 (2024). Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." *Id.* (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev., LLC*, 55 Cal. 4th 223, 246 (2012)). Substantive unconscionability focuses on whether the contract's terms are "unfair" or "one-sided." *Id.* at 493.

"Both procedural and substantive elements must be present to conclude a term is unconscionable, but these required elements need not be present to the same degree." *Id.* Instead, "[c]ourts apply a sliding scale analysis under which 'the more substantively oppressive [a] term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Id.* (second alteration in original) (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)). "The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." *Id.* at 495 (quoting *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245 (2016)). "The party resisting enforcement of an arbitration agreement has the burden to establish unconscionability." *Id.* at 492.

1.  *Procedural Unconscionability*

Tanious argues that there is a high level of procedural unconscionability because the Promissory Note is a contract of adhesion and oppressive. (Opp'n 6–7.)

Defendants counter that Tanious fails to provide any evidence to establish procedural unconscionability. (Reply 6–8.)

The procedural unconscionability analysis "begins with an inquiry into whether the contract is one of adhesion." *Armendariz*, 24 Cal. 4th at 113. "An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power on a take-it-or-leave-it basis." *OTO, L.L.C v. Kho*, 8 Cal. 5th 111, 126 (2019) (internal quotation marks omitted). "[T]he adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 915 (2015).

Tanious asserts the Promissory Note is a "contract of adhesion" because it "is a standard form that" Defendants seek "to have all employees sign without allowing any revisions." (Opp'n 7.) Defendants do not dispute that Tanious had no opportunity to negotiate the Promissory Note's terms before accepting the Bonus. (*See* Mot. 18–19; Reply 7–8.) Moreover, Defendants assert that providing the Bonus, "subject to the terms of the Promissory Note," is "typical and industry-standard." (Mot. 9.) The Promissory Note itself suggests that Defendants presented Tanious with a take-it-or-leave-it offer. (*See* Promissory Note 14 ("To acknowledge your understanding of the terms on which the bonus will be paid, please sign this letter.")); *Anderson v. Safe Streets USA LLC*, No. 2:18-cv-00323-KJM, 2018 WL 4106135, at *8 (E.D. Cal. Aug. 29, 2018) (finding a contract adhesive when defendant did not deny an optional agreement was standardized and presented it on a take-it-or-leave-it basis). Further, courts routinely find that a bonus agreement can be adhesive. *See, e.g., Simmons v. Morgan Stanley Smith Barney, LLC*, 872 F. Supp. 2d 1002, 1016 (S.D. Cal. 2012) (finding a bonus agreement to be adhesive because an employer had superior bargaining strength and the employee had no chance to negotiate); *Anderson*, 2018 WL 4106135, at *8 (finding a bonus agreement to be adhesive). Therefore, the Court finds that the Promissory Note is a contract of adhesion.

This alone demonstrates "only a low degree of procedural unconscionability." *Ramirez*, 16 Cal. 5th at 494. To establish more than a low degree of procedural unconscionability, courts look to two factors: oppression and surprise. *Kho*, 8 Cal. 5th at 126. "Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form." *Pinnacle*, 55 Cal. 4th at 247 (quoting *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1317 (2005)). When analyzing oppression, courts consider (1) "the amount of time the party is given to consider the proposed contract;" (2) "the amount and type of pressure exerted on the party to sign the proposed contract;" (3) "the length of the proposed contract and the length and complexity of the challenged provision;" (4) "the education and experience of the party;" and (5) "whether the party's review of the proposed contract was aided by an attorney." *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1348 (2015).

Tanious argues that the "arbitration scheme is unduly confusing, and therefore oppressive to a layperson." (Opp'n 7.) But Tanious does not offer any specific facts that supports this conclusory statement. (*See id.* at 7.) Claiming that the Arbitration Clause confuses a *layperson* does not show how the provision confused *Tanious*. *See Grand Prospect*, 232 Cal. App. 4th at 1352 (considering signatory's age, intelligence, business acumen, and experience). Tanious fails to show how the facts and circumstances of the bargaining placed her at a disadvantage. Thus, in the absence of specific facts, Tanious fails to establish oppression.

Tanious does not explicitly argue surprise; rather she contends—in her argument concerning substantive unconscionability—that Defendants did not attach the arbitration rules to the contract. (Opp'n 11–13); *see, e.g., Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1472 (2013) (considering failure to attach arbitration rules within procedural unconscionability analysis).

Courts find surprise exists when a party drafts the arbitration provision "with an aim to thwart, rather than promote, understanding." *Kho*, 8 Cal. 5th at 129. However, the failure to attach a copy of arbitration rules does not, by itself, support a finding of surprise. *Lane v. Francis Cap. Mgmt.*, 224 Cal. App. 4th 676, 691 (2014) ("There could be no surprise, as the arbitration rules referenced in the agreement were easily accessible to the parties—the [arbitration] rules are available on the Internet."); *Peng*, 219 Cal. App. 4th at 1472 ("[F]ailure to attach the [arbitration] rules, standing alone, is insufficient grounds to support a finding of procedural unconscionability."). Further, the Arbitration Clause referenced a website where the rules were available. (*See* Arbitration Clause ("A link to the pertinent FINRA rules for employment (industry) arbitrations can be found at the following web site: http://finra.complinet.com/.").)[5]

Although Tanious demonstrates some procedural unconscionability stemming from the adhesive nature of the Promissory Note, she fails to establish oppression or surprise. Because Tanious proves only a low degree of procedural unconscionability, she must establish a high degree of substantive unconscionability to avoid arbitration. *Lang v. Skytap, Inc.*, 347 F. Supp. 3d 420, 427–28 (N.D. Cal. 2018) (noting that a court "must find a high degree of substantive unconscionability" when it finds "minimal" procedural unconscionability based on the contract being adhesive).

*2.    Substantive Unconscionability*

Tanious raises two arguments under substantive unconscionability: (1) the Arbitration Clause violates the *Armendariz* Requirements; and (2) the forum selection clause is unenforceable and renders the Arbitration Clause unconscionable. (Opp'n 8–11.) The Court addresses each argument in turn.

---

[5] When the Court searched the website address, the website did not contain the applicable arbitration rules. This does not indicate whether the website contained the applicable rules when Tanious signed the Promissory Note in 2015, and Tanious does not allege that the website address did not redirect to the rules at the time she signed the Promissory Note.

### a. The *Armendariz* Requirements

In *Armendariz*, the California Supreme Court held that "arbitration of a claim based on nonwaivable statutory civil workplace rights could only be compelled if the agreement satisfied five minimum requirements." *Ramirez*, 16 Cal. 5th at 504. An arbitration agreement is lawful if it (1) "provides for neutral arbitrators," (2) "provides for more than minimal discovery," (3) "requires a written award," (4) "provides for all types of relief that would otherwise be available in court," and (5) "does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as condition of access to the arbitration forum." *Id.* (quoting *Armendariz*, 24 Cal. 4th at 102). The Court addresses only the issues Tanious raises: the first and second factors. (*See* Opp'n 8–11); *Ramirez*, 16 Cal. 5th at 492 (noting that the burden to establish unconscionability falls on the party challenging the enforcement of an arbitration provision).

As to the first *Armendariz* factor, Tanious argues that the FINRA arbitrator will be incentivized to side with Defendants because the arbitrator could obtain repeat business from Defendants. (Opp'n 11.) While the California Supreme Court "has taken notice of the 'repeat player effect,' the court has never declared this factor renders the arbitration agreement unconscionable per se." *Mercuro v. Superior Ct.*, 96 Cal. App. 4th 167, 178 (2002). Further, CAPID Rule 13400 grants Tanious a role in selecting the arbitrator: parties "select their panel through a process of striking and ranking the arbitrators on lists generated by the list selection algorithm." (RJN Ex. 2.) Because Tanious merely speculates about the arbitrator's incentive, (Opp'n 11), the Court does not find this factor weighs in Tanious's favor. *See Ramirez v. LQ Mgmt.*, No. 2:19-cv-06507-ODW (JPRx), 2020 WL 2797285, at *5 (C.D. Cal. May 29, 2020) ("Mere speculation that arbitrators at JAMS will favor [defendant] solely on the basis of repeat business does not amount to substantive unconscionability.").

As to the second *Armendariz* factor, Tanious argues that the Arbitration Clause limits her access to discovery. (Opp'n 9.) But parties can agree to "something less

than the full panoply of discovery provided" by law. *Ramirez*, 16 Cal. 5th at 504 (quoting *Armendariz*, 24 Cal. 4th at 105–06). California law permits "[t]he scope of what discovery is sufficient [to be] determined by the arbitrator." *Id.* at 505. Even so, arbitration "must generally permit employees sufficient discovery to adequately arbitrate any statutory claims." *Id.* A court's assessment of whether discovery is adequate "should focus on general factors that can be examined without relying on subsequent developments." *Id.* at 506. These factors include "the types of claims covered by the agreement, the amount of discovery allowed, the degree to which that amount may differ from the amount available in conventional litigation, any asymmetries between the parties with regard to discovery, and the arbitrator's authority to order additional discovery." *Id.* Analyzing these factors together, the Court concludes that discovery permitted by the Arbitration Clause is sufficient, and thus, the second *Armendariz* factor does not weigh in Tanious's favor.

First, the types of claims covered by the Arbitration Clause are not unfairly one-sided because both parties agreed to arbitrate all employment disputes. (Arbitration Clause (applying to all applicable claims "regardless of which Party commences the claim")); *see Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 724 (2004) (holding that an arbitration "agreement may be unfairly one-sided if it compels arbitration of the claims more likely to be brought by the weaker party but exempts from arbitration the types of claims that are more likely to be brought by the stronger party").

Second, the CAPID Rules appear to limit, but not foreclose, Tanious's access to discovery. Although CAPID Rule 13506 does not generally permit parties to request standard interrogatories, (RJN Ex. 3 at 22),[6] CAPID Rule 13512 allows arbitrators to "issue subpoenas for the production of documents or the appearances of witnesses," (*id.* at 30). CAPID Rule 13510 also permits depositions upon motion "in cases involving claims of . . . statutory employment discrimination" if the arbitrator finds it "necessary and consistent with the expedited nature of arbitration." (RJN Ex. 2

---

[6] As there is no pagination on Exhibit 2 of Defendants' RJN, the Court cites the ECF page numbers.

at 28.); *see Ramirez*, 16 Cal. 5th at 506 ("We note that giving the arbitrator authority to expand discovery based on *Armendariz*'s requirement is one way the adequacy concern can be addressed.").

Third, Tanious does not identify how the CAPID Rules provide asymmetries between the parties' access to discovery. (*See* Opp'n 10.) Tanious notes that "Defendants have the benefit of being able to interview all witnesses that still work for them," but this circumstance exists whether or not the CAPID Rules apply. (*Id.*) And, as discussed above, CAPID Rule 13510 permits Tanious to conduct depositions upon motion. (RJN Ex. 2 at 28.)

Finally, as to the arbitrator's authority to order additional discovery, Tanious ignores that CAPID Rules 13510, 13512, and 13513 grant the arbitrator control over the scope of discovery. (RJN Ex. 3 at 28, 30, 33); *see Ramirez*, 16 Cal. 5th at 506 ("Allowing the arbitrator to deviate from agreed-upon default discovery limits ensures that neither party will be unfairly hampered in pursuing a statutory claim based on circumstances that arise post-formation.").

Accordingly, the second *Armendariz* factor does not weigh in Tanious's favor because the CAPID Rules provide "sufficient discovery to adequately arbitrate" her claims. *Ramirez*, 16 Cal. 5th at 505. Thus, the Court finds that the Arbitration Clause is not unconscionable under the *Armendariz* requirements. *See Armendariz*, 24 Cal. 4th at 102.

      b. <u>Forum Selection Clause</u>

Next, Tanious asserts that "the forum selection clause requires that the [a]greement be 'governed by and construed in accordance with the laws of the State of Missouri' and is thus voidable, substantively unconscionable and thus unenforceable." (Opp'n 8 (quoting Promissory Note 13).)

As it is unclear whether Tanious is challenging the forum selection clause (i.e., consenting to Missouri jurisdiction) or the choice of law provision (i.e., agreeing that Missouri law governs the Promissory Note), the Court construes Tanious's argument

1 as challenging both provisions. (*See* Opp'n 9.) California Labor Code section 925 prohibits an employer from requiring "an employee who primarily resides and works in California, as a condition of employment, to agree to" forum selection clauses or choice of law provisions that would affect claims or controversies arising in California. Cal. Lab. Code § 925(a).

Even assuming *arguendo* that the forum selection and choice of law provisions violate California law, the Arbitration Clause is not substantively unconscionable. A contract "*provision*" that violates section 925 "is voidable by the employee," meaning that even if the forum selection clause or the choice of law clause is unenforceable, the Arbitration Clause stands as an entirely separate provision. *See id.* § 925(b) (emphasis added). Further, Tanious provides no authority that a finding of an unenforceable forum selection clause or unenforceable choice of law clause voids an arbitration clause. (*See* Opp'n 8–9.) As Defendants only seek to enforce the Arbitration Clause, Tanious's forum selection and choice of law challenges are irrelevant to the Court's unconscionability analysis. Therefore, the Court declines to determine whether the forum selection and choice of law clauses are enforceable.

Tanious fails to show any, let alone a high degree of, substantive unconscionability. *See Lang*, 347 F. Supp 3d at 427 ("[E]ven where an adhesion contract is at issue, the court must still find a high degree of substantive unconscionability . . . ."). Therefore, the Arbitration Clause is not unconscionable and is enforceable. *See Ramirez*, 16 Cal. 5th at 493 ("Both procedural and substantive elements must be present to conclude a term is unconscionable . . . .").

Tanious and Wells Fargo agreed to arbitration and Tanious fails to show that it is unenforceable. Accordingly, the Court must compel arbitration. *See Cox*, 533 F.3d at 1119 (noting that a court must compel arbitration if there was an agreement to arbitration and if the agreement covers the dispute).

### C. Dismiss or Stay

Lastly, the Court considers whether to stay the action or dismiss the case. "When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024). As discussed above, all of Tanious's claims fall within the scope of the Arbitration Clause. (*Compare* Compl. ¶¶ 16–47, *with* Arbitration Clause). And Defendants request a stay of this action pending arbitration. (*See* Mot. 20–21.) Accordingly, this matter is **STAYED** pending resolution of arbitration.

## V. CONCLUSION

For the forgoing reasons the Court **GRANTS** Defendants' Motion to Compel Arbitration. (ECF No. 13.) The parties are hereby **COMPELLED** to arbitrate the claims Tanious asserts in her Complaint. Consequently, the Court **DENIES** Defendants' Motion to Stay Discovery as moot. (ECF No. 28.)

Starting on **February 1, 2025**, and by the first of the month every three (3) months thereafter, the parties shall file a Joint Status Report informing the Court of the status of arbitration. Furthermore, the parties shall file a Joint Status Report no later than ten (10) days following the conclusion of arbitration.

**IT IS SO ORDERED.**

Novemver 8, 2024

_____
OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE